UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUKCY
BOWLING GREEN DIVISION

|  |  |  |
|---|---|---|
| BENJAMIN TYLER MCDOUGLE, on behalf of himself and all others similarly situated | ) ) ) ) | CIVIL ACTION NO. **1:19-cv-00115-GNS** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **DEFENDANTS' NOTICE OF REMOVAL AND** |
| 3M COMPANY; 3M OCCUPATIONAL SAFETY LLC; AEARO HOLDINGS, LLC; AEARO INTERMEDIATE, LLC; AEARO, LLC; and AEARO TECHNOLOGIES, LLC, | ) ) ) ) ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendants. | ) | |

*** *** *** ***

Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC, and Aearo Technologies, Inc., (collectively, "Defendants") pursuant to 28 USC §§ 1441 and 1446, hereby give notice of the removal of this action from the Circuit Court of Warren County, Kentucky, to the United States District Court for the Western District of Kentucky, Bowling Green Division. In support of the Notice of Removal, Defendants state as follows:

### I.  <u>Notice of Removal is Timely Filed</u>

McDougle filed this lawsuit in Warren Circuit Court, Commonwealth of Kentucky, on July 26, 2019. McDougle's lawsuit against the Defendants is styled as follows: *Benjamin Tyler McDougle, on behalf of himself and all others similarly situated v. 3M Company; 3M Occupational Safety LLC; Aearo Holdings, LLC; Aearo Intermediate, LLC; Aearo, LLC; and Aearo*

*Technologies, LLC*, Warren Circuit Court, Civil Action No. 19–CI–01029. Defendants were served with the summons and complaint on August 2, 2019. This Notice of Removal is therefore filed within the time period required by 28 USC § 1446(b).

## II.    Nature of Suit

On July 26, 2019, McDougle filed this products-liability action alleging that Dual-ended Combat Arms earplugs he was provided during his military service and allegedly designed or manufactured by the "Aearo Defendants"[1] were defective. McDougle began his military service in 2014 and was discharged in 2016, the same year he was allegedly diagnosed with noise in-duced hearing loss.

McDougle claims to bring his lawsuit on behalf of "[a]ll individuals in the United States and United States territories who used Defendants' . . . Dual-ended Combat Arms earplugs dur-ing their service in the United States Military."[2] McDougle seeks compensatory damages, with interest, costs of suit, and attorneys' fees, and punitive damages.

## III.    Venue

Venue is proper in this district because the state court action is pending in Warren Circuit Court, within Kentucky's Eighth Judicial Circuit, which includes Bowling Green. *See* 28 USC § 1446(a).

## IV.    Basis for Removal

Removal is appropriate on several grounds: (1) there is complete diversity between the parties and over $75,000 in controversy, thus this Court has diversity jurisdiction under 28 USC § 1332; (2) this Court has original jurisdiction under the Class Action Fairness Act, 28 USC §§ 1332(d), 1453, and 1711–53; (3) this Court has jurisdiction under 28 USC § 1442(a)(1) because

---

[1] Complaint, at ¶ 30.
[2] *Id.* at ¶ 101–02.

the design of the Dual-ended Combat Arms earplugs was done in close coordination with the U.S. military; and (4) this case invokes a question of federal law under 28 USC § 1331.

### A.  This Court has Diversity Jurisdiction.

While CAFA alone provides this Court with sufficient subject matter jurisdiction, removal is also appropriate based on the diversity of citizenship jurisdiction. 28 USC § 1332(a). The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the controversy is wholly between citizens of different states. Consequently, the pending state court action is removable to this Court under 28 USC § 1441(a).

### 1.  Diversity of citizenship exists between McDougle and Defendants.

Upon information and belief, McDougle is a citizen of the Commonwealth of Kentucky, residing in Warren County, Kentucky at the time of the filing of the Notice of Removal.[3] For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members. *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006). And "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 USC § 1332(c)(1). None of the Defendants are Kentucky citizens, as McDougle's Complaint specifically states:

1. 3M Company is a Delaware corporation with its principal place of business in St. Paul, Minnesota.[4]
2. 3M Occupational Safety LLC is a Delaware limited liability company.[5]
3. Aearo Holding LLC is a Delaware limited liability company with its principal place of business in Minnesota.[6]

---

[3] Complaint, at ¶ 11 ("Plaintiff, Benjamin Tyler McDougle, is a citizen of Kentucky.").
[4] Complaint, at ¶12.
[5] *Id.* at ¶15.
[6] *Id.* at ¶18.

4. Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC are Delaware limited liability companies with their principal place of business in Indiana.[7]

Thus, there is complete diversity between the parties, as required for this Court to exercise its diversity jurisdiction under 28 USC § 1332.

### 2. Amount in controversy.

While McDougle does not specify an amount of damages in his Complaint, the Complaint's allegations make it more likely than not that McDougle's damages are in excess of $75,000, exclusive of interest and costs. McDougle seeks compensatory and punitive damages based on past and future medical expenses, pain and suffering, and attorneys' fees on behalf of putative class members, which McDougle claims number in the hundreds or thousands.

Kentucky Rule of Civil Procedure 8.01(a) only allows for a 'short and plain statement … showing that the pleader is entitled to relief'" and therefore, even if a plaintiff were to include an 'exacting statement in her Complaint'" concerning the amount in controversy, it would not be "procedurally proper, and could be ignored or amended at a later time in these proceedings." *Cook v. Moore*, 2012 WL 5398046 (W.D. Ky. Nov. 2, 2012); *see also* 8 U.S.C. § 146(c)(2)(A)(ii) and (B).

Accordingly, 28 U.S.C. § 1446 permits a defendant to assert the amount of controversy in its notice of removal "because Kentucky both prohibits the demand for a specific sum and allows recovery beyond that demanded in the pleadings." *Carneal v. Travelers Casualty Ins. of America*, 2013 WL 85148 (W.D. Ky. Jan. 7, 2013). In seeking removal, Defendant's burden is to show that it is "more likely than not" that the amount in controversy is above $75,000. *William-*

---

[7] *Id.* at ¶¶ 21–27.

son v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007). This "does not place upon Defendant the daunting burden of proving, to a legal certainty, that Plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require Defendant to research, state, and prove Plaintiff's claims for damages." Gafford v. General Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993); abrogated on other grounds by Hertz Corp. v. Friend, 130 S. Ct. 1181 (2010).

**B.  This Court has Original Jurisdiction Under CAFA.**

Under CAFA, federal district courts have original jurisdiction over any class action where the matter in controversy exceeds $5 million, exclusive of interest and costs, and at least one plaintiff class member is diverse from at least one defendant ("minimal diversity"). 28 USC § 1332(d)(2). CAFA also requires that no "State, State officials, or other government entities against whom the district court may be foreclose from order relief" be joined as defendants, and that the proposed plaintiff class have at least 100 members. Id. at § 1332(d)(5). This case meets each requirement.

McDougle and the putative class members seek compensatory damages for past medical expenses, future medical expenses, costs of this suit, attorneys' fees, and punitive damages. It is, therefore, "facially apparent" that McDougle's allegations seek potential damages greater than $5 million, exclusive of interests and costs. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014); see also, e.g., Robertson v. Exxon Mobil Corp., 814 F.3d 236, 240 (5th Cir. 2015).

McDougle does not explicitly state the citizenship of all putative class members, but minimal diversity for CAFA jurisdiction is satisfied. According to his Complaint, McDougle is a

Kentucky citizen.[8] But the Defendants' principal places of business are outside Kentucky, according to McDougle's Complaint:

1. 3M Company is a Delaware corporation with its principal place of business in St. Paul, Minnesota.[9]
2. 3M Occupational Safety LLC is a Delaware limited liability company.[10]
3. Aearo Holding LLC is a Delaware limited liability company with its principal place of business in Minnesota.[11]
4. Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC are Delaware limited liability companies with their principal place of business in Indiana.[12]

And Louisiana is the only state listed for the putative class members. Minimal diversity is established because jurisdiction is appropriate when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 USC § 1332(d)(2)(A). Thus, this Court has proper jurisdiction under CAFA's diversity requirements.[13]

McDougle has alleged that the putative class consists of "at a minimum hundreds—and more likely, thousands—of class members."[14] The number of class members, therefore, is plainly greater than 100 as required by CAFA. 28 USC § 1332(d)(5)(B).

In sum, because the matter in controversy exceeds $5 million, exclusive of interests and costs, there is minimal diversity, no defendants are governmental entities, and the putative class has at least 100 members, this Court has jurisdiction under CAFA.

---

[8] *Id.* at ¶11 ("Plaintiff, Benjamin Tyler McDougle, is a citizen of Kentucky.").

[9] *Id.* at ¶12.

[10] *Id.* at ¶15.

[11] *Id.* at ¶18.

[12] *Id.* at ¶¶ 21–27.

[13] No defendant is a "Stat[e], State officia[l], or other governmental entit[y] against whom the district court may be foreclosed from ordering relief." 28 USC § 1332(d)(5)(A).

[14] Complaint, at ¶105.

Moreover, no jurisdictional exceptions outlined in CAFA—the discretionary, "local controversy," and "home state" exceptions discussed below—operate to preclude this Court's exercise of its jurisdiction. McDougle bears the burden of establishing any exception to this Court's CAFA jurisdiction. *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006). None are applicable in this case.

### 1.  The discretionary jurisdiction exception does not apply.

A district court may decline to exercise CAFA jurisdiction where "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 USC § 1332(d)(3). This exception is inapplicable.

On the face of McDougle's Complaint, McDougle is the *only* plaintiff mentioned in Kentucky. Again, the only state McDougle explicitly lists is Louisiana. The discretionary exception is plainly not applicable to these facts.

"[P]rimary defendants" are those who are alleged to have "played the primary role." *Watson v. City of Allen, Tx.*, 821 F.3d 634, 641 (5th Cir. 2016). To determine which defendants are primary, the court looks to the "suit's primary thrust." *Id.* In any event, even if the proposed class were composed of the necessary Kentucky members, the "primary defendants" are *not* Kentucky citizens. In fact, *none* of the Defendants are Kentucky citizens. Thus, regardless of which Defendant, if any, can be considered a "primary defendant," the discretionary jurisdiction exception is inapplicable.

### 2.  The local controversy exception does not apply.

The "local controversy" exception to CAFA jurisdiction applies where: (1) more than two-thirds of the proposed plaintiff class members "are citizens of the State in which the action

was originally filed"; (2) at least one defendant is a defendant "from whom significant relief is sought," "whose alleged conduct forms a significant basis for the claims asserted," and "who is a citizen of the State in which the action was originally filed"; (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and (4) "during the 3-year period preceding the filing of the class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 USC § 1332(d)(4)(A).

At a minimum, McDougle's Complaint fails the second and third prongs of the local controversy exception. Those prongs require that there be a Kentucky defendant and that the injuries occurred in Kentucky. But, again, there are *no* Kentucky defendants and according to McDougle's Complaint, he *never* wore the alleged defective earplugs in Kentucky (instead, wearing them in Georgia, South Korea, and Louisiana) and he was diagnosed with "noise induced hearing issues" at Fort Polk, Louisiana. The failure of one prong, let alone two, precludes the local controversy exception. *See Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 371 (E.D. La. 2007) ("The use of the conjunctive 'and' in Section 1332(d)(4)(A) makes it clear that all four of its elements must be satisfied for the 'local-controversy' exception to apply. Therefore, because plaintiffs cannot carry their burden on the fourth element of the 'local-controversy' test, this Court has jurisdiction over this matter under CAFA.").

### 3.  The home state exception does not apply.

The final exception to CAFA jurisdiction operates where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 USC § 1332(d)(4)(B). Here,

McDougle has not identified *any* Kentucky class members—again, the only state McDougle identifies in his Complaint is Louisiana. Moreover, there are no Kentucky defendants in this case, let alone a *primary* defendant. This Court has CAFA jurisdiction.

### C.  Removal is Proper Under the Federal Officer Removal Statute.

Removal is also proper under 28 USC § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal rights under this section are much broader than under the general removal statute, 28 USC § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of s 1442 (a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The removing defendant must establish that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.*, *Ayo v. 3M Co.*, No. 18-CV-0373 (JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal

was proper in case where product liability was sought for defendants' product's conformance with military specifications).

### 1.  The "person" requirement is satisfied.

The first requirement for removal under Section 1442 is satisfied because 3M is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 USC § 1); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135–36 (2d Cir. 2008) (holding non-natural person to be a "person" under § 1442).

### 2.  The "acting under" requirement is satisfied.

To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Jacks*, 701 F.3d at 1230 (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813; *see also Jacks*, 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed"'") (quoting *Watson*, 551 U.S. at 147).

The "acting under" requirement is met here because McDougle directly challenges Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. The Dual-ended

Combat Arms earplugs at issue were designed and manufactured specifically to meet the needs

of the U.S. military. McDougle's Complaint acknowledges this:

- "The earplugs were designed to purportedly provide soldiers with two different options for hearing attenuation depending upon which end of the earplugs was inserted into the ear."[15]
- "[T]he Dual-ended Combat Arms earplugs were designed to help provide situational awareness by protecting against concussive disorientation effects associated with impulse noise."[16]
- "The other end of the Dual-ended Combat Arms earplug (the yellow end) was marketed, advertised, and promoted by Defendants to reduce loud impulse sounds such as battlefield explosions and artillery fire , while also allowing the user to hear quieter noises such as commands spoken by fellow soldiers and approaching enemy combatants (the "open" or "unblocked" position)."[17]
- "Defendants expressly certified that the Dual-ended Combat Arms earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202."[18]
- "From 2003 to 2012, Defendants were the exclusive supplier of Dual-ended Combat Arms earplugs to U.S. military personnel."[19]

Moreover, Defendants developed the Dual-ended Combat Arms earplugs under the direction of, and with significant involvement of, representatives of the U.S. military. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding that the defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agenda to complete."); *Isaacson*, 517 F.3d at 137 ("Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the ab-

---

[15] *Id.* at ¶ 32.
[16] *Id.* at ¶ 33.
[17] *Id.* at ¶ 35.
[18] *Id.* at ¶ 78.
[19] *Id.* at ¶ 74.

sence of Defendants, the Government would have had to produce itself."); *In re National Pre-scription Opiate Litig.*, 327 F. Supp. 3d 1064, 1075–76 (N.D. Ohio 2018) (removal under § 1442 was appropriate were defendant was subject to "precise specifications" of government contract, administration of contract was overseen by federal official, and absent defendant's role, govern-ment would have had to warehouse and distribute product itself).

### 3. The "causation" requirement is satisfied.

The second prong, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quota-tion marks, alterations, and citation omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (*citing Acker*, 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the re-quired causal connection" would "defeat the purpose of the removal statute").[20]  In 2011, Con-gress further expanded Section 1442 by amending section 2(b) to permit removal "for ***or relating to*** any acts under color" of federal office, so as "to broaden the universe of acts that enable Fed-eral officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (em-phasis showing addition).

"To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred ***while*** Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137–38 (emphasis in original). Here, McDougle's claims arise from Defendants' pro-

---

[20] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

duction and sale of Dual-ended Combat Arms earplugs to military specifications. McDougle al-leges that the design of the Dual-ended Combat Arms earplugs is defective. Aearo developed and designed the earplugs at the direction of federal officers.

Further, even if McDougle were to prove that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harm alleged. *See Isaacson*, 517 F.3d at 138. "[W]hether the challenged act was out-side the scope of Defendants' official duties, or whether it was specifically directed by the fed-eral Government, is one for the federal—not state—courts to answer." *Id.* (*citing Willingham*, 395 U.S. at 409.)

### 4. The "colorable federal defense" requirement is satisfied.

The fourth requirement (establishing a "colorable federal defense") is satisfied by 3M's assertion of the government contractor defense and the combatant activities defense. Courts around the country have held that the government contractor defense and the combatant activities defense support removal under § 1442(a)(1). *See, e.g., Jacks*, 701 F.3d at 1234–35 (government contractor defense supports removal under § 1442); *Isaacson*, 517 F.3d at 139 (same); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017) (same); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (both government contractor defense and combatant activities defenses supported removal under Section 1442).

A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks*, 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id.* (*citing Willingham*, 395 U.S. at 406–07 ("[The federal officer removal statute] is broad enough to cover

all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.").)

At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[21]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

### a. Defendants have a colorable government contractor defense.

Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle*, 487 U.S. at 512.

Defendants have satisfied all of these elements for purposes of removal. As discussed above, the U.S. Military established reasonably precise specifications governing double-ended non-linear earplugs' performance, testing, inspection, packaging, and labeling, with which the Dual-ended Combat Arms earplugs complied. McDougle likewise alleges that the Dual-ended

---

[21] *See also Kraus v. Alcatel-Lucent*, Civil Action No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

Combat Arms earplugs were subject to stringent military specifications: "Defendants expressly certified that the Dual-ended Combat Arms earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.[22] When properly used, the Dual-ended Combat Arms earplugs fully conform to those specifications.

Finally, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring the Dual-ended Combat Arms earplugs. The U.S. military was actively involved in discussions with Defendants in the development of the Dual-ended Combat Arms earplugs regarding its length and instructions for use.

At minimum, this constitutes colorable evidence that the U.S. military generally "made a discretionary determination" regarding the requirements and design of the Dual-ended Combat Arms earplugs' benefits against the alleged risks. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145, at *14 (E.D.N.Y. Sept. 30, 2018) (holding removal proper under §1442 because defendants presented "colorable evidence" that government was aware of alleged problems with product at is-

---

[22] Compl. at ¶ 78; *see also id.* at ¶ 80 ("The pertinent Salient Characteristics set forth in the MPID, which were uniform across all military Requests for Proposals, are, in relevant part, as follows:

| | |
|---|---|
| 2.1.1 | Earplugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the user to clearly hear normal speech and quieter sounds, such as voice commands, on the battlefield. |
| 2.2.2. | The sound attenuation of both ends of the earplugs shall be tested in accordance with ANSI S3.19. |
| 2.4 | Workmanship. The earplugs shall be free from all defects that detract from their appearance or impair their serviceability. |
| 2.5 | Instructions. Illustrated instructions explaining the proper use and handling of the earplugs shall be supplied with each unit. (emphasis removed) (quoting Solicitation No. SP0200-06-R-4202 at 41–42). |

sue); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *Agent Orange*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

### b.  3M has a colorable basis for asserting that this case presents a non-justiciable political question.

Defendants also intend to argue that McDougle's suit presents a nonjusticiable political question. "[M]ilitary activities often give rise to political questions." *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358 (11th Cir. 2007). Courts have recognized that "the interjection of tort law into the realms of foreign policy and military affairs would effectively permit judicial reappraisal of judgments the Constitution has committed to the other branches." *Id.* (citation and internal quotation omitted). Thus, decisions about "[t]he strategy and tactics employed on the battlefield" are beyond a federal court's ability to review. *Tiffany v. United States*, 931 F.2d 271, 277 (4th Cir. 1991).

As a general matter, cases brought by "soldiers injured at the hands of the military raise political questions." *Whitaker*, 444 F. Supp. 2d at 1281; *see also Bentzlin*, 833 F. Supp. at 1497-98, *Carmichael v. Kellogg Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th Cir. 2009). Moreover, "a soldier injured at the hands of a contractor which is performing military functions subject to the military's orders and regulations also raises the same political questions." *Whitaker*, 444 F. Supp. 2d at 1281. This is such a case. McDougle was a member of the U.S. military from 2014 to 2016 and alleges he was issued the Dual-ended Combat Arms earplugs during his ser-

vice by the U.S. military.[23] McDougle claims that he wore the Dual-ended Combat Arms earplugs while firing weapons and throughout his military service, and that he was diagnosed with noise induced hearing loss.[24] There is no doubt that the U.S. Military made the decision to issue the Dual-ended Combat Arms earplugs to McDougle, that the U.S. Military directed McDougle's training at the firing range, and that the U.S. Military directed McDougle's combat activities.[25] *See Whitaker*, 444 F. Supp. 2d at 1279 (concluding that suit against Army contractor for negligent operation of a convoy vehicle presented a political question where the Army regulated "all aspects of control, organization, and planning of Army convoy operations").

As discussed above, the design of the Dual-ended Combat Arms earplugs reflects the balance struck by the military between hearing protection and military operational needs. The decision to issue the Dual-ended Combat Arms earplugs U.S. military service members, and the instructions to McDougle and other service members, about when and where to use them, was made by the U.S. military. Accordingly, resolution of McDougle's claims for design defect and inadequate warnings requires inquiry into the military's decisions and conduct. *See Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("The complex subtle, and professional decisions as to the composition, training, equipping and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches."). McDougle's claims therefore are nonjusticiable and are barred by the political question doctrine.

---

[23] *Id.* at ¶ 99–102.

[24] *Id.* at ¶ 102–07.

[25] This case is, therefore, unlike *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1104 (N.D. Ill. 2015), where the court rejected the application of the political question doctrine and remanded to state court because the plaintiffs were family members of civilian contractors, not service members, and the military had "only tangential involvement" in those civilians' deaths in a plane crash.

### D.  This Court has Jurisdiction Because McDougle's Claims Present a Question of Federal Law.

Finally, removal of this action is proper because McDougle's claims almost certainly arose, at least in part, at a federal enclaves—namely, U.S. military facilities. To that extent, the claims are governed by federal law and are subject to this Court's federal-question jurisdiction under 28 USC § 1331. This action is, therefore, removable under 28 USC § 1441(a).

"A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction." *Brookhaven Sci. Assocs., LLC v. Donaldson*, No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (internal quotation and citation omitted). The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).

Because the United States exercises sole lawmaking authority over a federal enclave, the law applicable to that enclave is, by definition, federal law, although such federal law may incorporate state-law rules of decision. *See, e.g.*, *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *accord Macomber v. Bose*, 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress. Rights

18

arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.,* 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

Federal courts have federal-question jurisdiction under 28 U.S.C. § 1331 for actions involving tort claims that arise on federal enclaves. *See, e.g.*, *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (movant properly removed case to federal court when case was removed based on movant's status as a "person acting under" a federal officer, and status of the Air Force base as a federal enclave). It follows that such actions, if originally filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g.*, *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236 (10th Cir. 2012) (affirming grant of summary judgment on state employment law claims as barred by federal enclave doctrine after removal from state court).

McDougle's Complaint specifically states that he "wore the earplugs at Fort Benning Georgia, Camp Casey South Korea, Fort Polk Louisiana, and various military bases in the United States and South Korea."[26] His Complaint also states that the allegedly defective earplugs "were provided to [him] throughout his service including: during all training, while at shooting ranges, [and] for use throughout his service,"[27] presumably at U.S. military facilities. And McDougle "was first diagnosed with noise induced hearing issues . . . at Fort Polk, Louisiana."[28] allegedly suffered hearing damage, one or more of these facilities undoubtedly qualifies as a federal enclave. *See Jamil v. Workforce Res., LLC*, Case No.: 18-CV-27-JLS (NLS), 2018 WL 2298119, at

---

[26] Plf's Complaint, at ¶ 104.
[27] *Id.* at 102.
[28] *Id.* at ¶ 107.

19

*2 (S.D. Cal. May 21, 2018) (inferring from Complaint that some of the alleged events must have occurred at Marine Corps base, a federal enclave, and denying motion to remand). Because McDougle's claims almost certainly arose at a federal enclave, this Court has subject matter jurisdiction over the action, and removal of the action is proper under 28 U.S.C. § 1441(a).

**V.**    **Conclusion**

For all the foregoing reasons, Defendants hereby removes this action from the Warren Circuit Court of Kentucky's Eighth Judicial Circuit, to this Court.

Respectfully submitted,


*/s/ Byron N. Miller*
Byron N. Miller
Michael J. Bender
Thompson Miller & Simpson PLC
734 West Main Street, Suite 400
Louisville, KY 40202
Phone: (502) 585-9900
Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
*Counsel for Defendants 3M Company; 3M Occupational Safety LLC; Aearo Holdings, LLC; Aearo Intermediate, LLC; Aearo, LLC; Aearo Technologies, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed this 30th day of August 2019 through the operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A true and correct copy of the foregoing was also mailed and / or served via electronic mail to the following:

David O'Brien Suetholz
BRANSTETTER, STRANCH & JENNINGS, PLLC
515 Park Avenue
Louisville, Kentucky 40208
(502) 636–4333
davids@bsjfirm.com
*Counsel for Plaintiff*

J. Gerrard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, Tennessee 37203
(615) 254–8801
gerards@bsjfirm.com
*Counsel for Plaintiff*

Bryan Aylstock
AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC
17 E. Main Street
Suite 200
Pensacola, Florida 32502
(850) 202–1010
F: (850) 916–7449
baylstock@awkolaw.com
*Counsel for Plaintiff*

*/s/ Byron N. Miller*
*Counsel for Defendants*